

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROBERT HASTY                    *          CIVIL ACTION

VERSUS                          *          NO: 02-1542

TRANS ATLAS BOATS, INC., ET     *          SECTION: "D"(2)
AL

## ORDER AND REASONS

Before the court are the following motions filed by Defendant,

The Greater LaFourche Port Commission (GLPC):

   (1)  **"Motion to Dismiss"** Plaintiff's claims against the GLPC

        (Doc. No. 117); and

   (2)  **"Motion for Summary Judgment Requesting Dismissal of**

        **Cross-Claim of Trans Atlas Boats"** (Doc. No. 125).

The motions are respectively opposed by Plaintiff, Robert

Hasty, and Defendant, Trans Atlas Boats.  Both motions were set for

hearing on Wednesday, August 17, 2005, on which date the court

heard oral argument at the request of Plaintiff.  Now, having

considered the memoranda and argument of counsel, the record, and

the applicable law, the court finds that both motions should be

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____

granted.[1]

## I.  Background

Plaintiff alleges that he was employed by Trans Atlas Boats, Inc. as an engineer aboard its vessel, the M/V ROXANNE T, and on **March 28, 2001**, he allegedly sustained injuries when he was assaulted by Leroy Brown, Jr., a deckhand on the vessel.  Mr. Brown had allegedly been escorted off the vessel by the GLPC Harbor Police before the altercation between Plaintiff and Mr. Brown ensued, but Mr. Brown somehow subsequently managed to re-board the vessel and the incident occurred.

On **May 20, 2002** (*more than one year after his alleged accident*), Plaintiff initially sued Trans Atlas Boats asserting claims that Trans Atlas Boats was negligent under the Jones Act.[2] (*See* Original Complaint, Doc. No. 1).

On **October 22, 2002** (*more than 1 ½ years after his alleged accident*), he subsequently named the GLPC as an additional defendant, claiming that GLPC was negligent in exercising its local

---

[1]	On August 29, 2005, Hurricane Katrina devastated the New Orleans area; thus, the issuance of this Order and Reasons was delayed.

[2]	Plaintiff also asserted a claim against Trans Atlas Boats for unseaworthiness under the general maritime law, but on August 22, 2003, the district court dismissed that claim on summary judgment.  (*See* Doc. No. 75 & Doc. No. 76, Judgment entered on September 3, 2003). The Fifth Circuit affirmed the dismissal of Plaintiff's unseaworthiness claim against Trans Atlas Boats on November 2, 2004.  (*See* Fifth Circuit Opinion, attached to Mandate, Doc. No. 86).

police powers, including its handling of Leroy Brown, Jr., failing to keep him in custody, allowing him to re-board the vessel, and failing to restrain him. (*See* Third Amending and Supplemental Complaint, Doc. No. 10). As to the GLPC, Plaintiff asserted jurisdiction based on both general maritime law and diversity.

The GLPC first filed a Motion for Summary Judgment, arguing that Plaintiff's negligence claim(s) against the GLPC did not constitute a maritime tort, and therefore was not cognizable under the court's admiralty jurisdiction. (Doc. No. 38). The district court granted the motion, finding lack of admiralty jurisdiction. The Fifth Circuit affirmed the dismissal of Plaintiff's claims against the GLPC asserted *under the court's admiralty jurisdiction*, stating:

> For a court to have maritime jurisdiction over a tort claim, a plaintiff must satisfy a two-part test: (1) the tort must have occurred on navigable water; and (2) the tort must bear a substantial relationship to traditional maritime activity. *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). Federal courts must proceed with caution when determining whether to expand admiralty jurisdiction. *Woessner v. Johns-Manville Sales Corp.*, 757 F.2d 634, 648 (5th Cir. 1985); *Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 272-73 (1972). We find that admiralty jurisdiction does not exist over Hasty's claims against the GLPC. **The conduct and activities of the GLPC are insufficiently related to traditional maritime activity.**

(*See* Fifth Circuit Opinion attached to Mandate, Doc. No. 86,

3

emphasis added).

However, the following issue remains regarding Plaintiff's claims asserted against the GLPC *under diversity jurisdiction*:

**because Plaintiff did not sue the GLPC until October 22, 2002 (which was more than 1 ½ years after his alleged March 28, 2001, incident),** *whether or not Plaintiff's filing of his Jones Act claim against Trans Atlas Boats on May 20, 2002* **(which was more than one year after his alleged March 28, 2001, incident)** *interrupts prescription on Plaintiff's state-law claims against the GLPC asserted under the court's diversity jurisdiction.*

(*See* Order entered on July 6, 2005, Doc. No. 116, pp. 11-12).

On July 25, 2005, Trans Atlas Boats filed an unopposed Motion to File Cross-Claim against the GLPC.  In that motion, Trans Atlas argued:

> to the extent there is any liability whatsoever for any losses, damages, injuries or for any claim whatsoever occasioned or incurred as a result of the accident and happenings in [this] matter, which is specifically denied, such liability rests in the fault, negligence, and/or strict liability of the GLPC, and Trans Atlas Boats, Inc. is entitled to contribution and/or indemnity from and against the GLPC.

(*See* Trans Atlas Boats' Motion to File Cross-Claim, Doc. No. 119, p. 1).

4

In its Cross-Claim against the GLPC, Trans Atlas Boats submits that the court has jurisdiction over the cross-claim "pursuant to the General Maritime Law," and/or alternatively, the court has supplemental jurisdiction pursuant to 28 U.S.C. §1367. (*See* Trans Atlas Boats' Cross-Claim, Doc. No. 121, ¶ I.). Trans Atlas "avers that if, in fact, it is found to be liable for the ... assault and/or injury of plaintiff, that it is owed contribution and/or indemnity and/or recovery from and against the GLPC, including all costs and attorney's fees." (*Id.* at ¶ V.).

Trans Atlas Boats maintains that:

> The need to file a claim for indemnity and/or contribution against the GLPC in this action became apparent when plaintiff suggested that, in the event his claim is dismissed against the GLPC, he would seek to prevent Trans Atlas from presenting evidence at trial that the GLPC was at fault for purposes of exonerating itself.
>
> Simply stated, in the event the foregoing comes to fruition, Trans Atlas would be placed in an untenable position. As this Honorable Court is undoubtedly aware, pursuant to *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979), joint and several liability exists in admiralty. Therefore, in the event plaintiff is able to establish liability against Trans Atlas and the GLPC at trial, which is specifically denied, plaintiff could look to Trans Atlas to recover one hundred percent of his damages. Without the right to seek indemnity and/or contribution from the GLPC, Trans Atlas would be potentially liable for damages in excess of its proportionate share

of fault.

(*See* Trans Atlas' Opp. to the GLPC's MSJ, at 2-3).

The GLPC now moves to dismiss the Plaintiff's state law claims asserted against the GLPC under the court's diversity jurisdiction, and it also moves for summary judgment requesting the dismissal of Trans Atlas Boats' Cross-Claim against the GLPC.

## II.  Legal Analysis

## A.  The GLPC's Motion to Dismiss Plaintiff's state-law claims asserted under diversity jurisdiction.

In its Motion to Dismiss, the GLPC essentially argues that Plaintiff's state-law claims against the GLPC have prescribed under Louisiana law.  The court agrees.

Louisiana Civil Code Article 3492 provides in pertinent part: "Delictual actions are subject to a liberative prescription of one year."  Since Plaintiff allegedly sustained his injury on March 28, 2001, his state law claims against the GLPC would ordinarily prescribe on March 28, 2002.  Plaintiff did not file his claims against the GLPC until October 22, 2002.

Plaintiff argues that his claims against the GLPC did not prescribe because on May 20, 2002, he timely filed a Jones Act claim against Trans Atlas Boats (i.e., within three years of the incident), and that timely suit against Trans Atlas Boats interrupted prescription against the GLPC.  However, by the time

6

Plaintiff sued Trans Atlas Boats (on May 20, 2002), which was more than one year after his alleged accident (on March 28, 2001), prescription had already run on his claims against the GLPC.  There was no action interrupting or suspending the prescriptive period as to the GLPC prior to March 28, 2002.

As the Louisiana courts explain:

> Interruption of prescription against joint tortfeasor A [GLPC] occurs by a timely lawsuit against joint tortfeasor B [Trans Atlas Boats] only as to conduct for which joint tortfeasors A and B are responsible, and **only if the cause of action against tortfeasor A [GLPC] was not prescribed when the suit against tortfeasor B [Trans Atlas Boats] was filed.**

*Noggarath v. Fisher*, 557 So.2d 1036, 1037 (4th Cir. 1990), *citing Whitnell v. Menville*, 540 So.2d 304 (La. 1989) & emphasis added. That did not occur here.

"Once prescription occurs it cannot be interrupted.  Timely suit against one solidary obligor [here, Trans Atlas Boats] does not interrupt prescription that has run against another solidary obligor [here, the GLPC]." *Noggarath*, 557 So.2d at 1037, *quoted in Rizer v. American Surety & Fidelity Ins. Co.*, 669 So.2d 387, 391 (La. 1996).

Similarly stated, "[o]nce prescription extinguishes a cause of action, a subsequent timely suit against a solidary obligor cannot revive the already prescribed action." *Rizer*, 669 So.2d at 390-91,

7

*citing Bustamento v. Tucker*, 607 So.2d 532, 536-37 (La. 1992).

Plaintiff cites one case, *Taylor v. Liberty Mutual Ins. Co.*, 579 So.2d 443 (La. 1991), in support of his argument that his state-law negligence claims against the GLPC have not prescribed. In *Taylor*, the Plaintiff was injured in a motor vehicular accident that occurred in Arkansas on July 22, 1985. Plaintiff filed suit against the offending driver in an Arkansas federal court on May 11, 1987 which was timely under Arkansas law, and subsequently filed suit against his employer's uninsured motorist carrier in a Louisiana state court on April 18, 1988 (before the Arkansas suit was settled and dismissed).

The Louisiana Supreme Court held that the Plaintiff's claim against his employer's uninsured motorist carrier was subject to a two-year prescriptive period from the date of the accident. Thus, Plaintiff had until July 22, 1987, to either file suit against the UM carrier, *or* timely file suit against the offending driver (in a court of competent jurisdiction and venue) to thus interrupt prescription as to UM carrier. Because Plaintiff's suit against the driver on May 11, 1987, was timely under Arkansas law, and filed in a court of competent jurisdiction and venue, he interrupted prescription on his UM claim which was alive on May 11, 1987.

Unlike the *Taylor* plaintiff, Plaintiff Hasty did not interrupt

8

prescription as to the Defendant sued last (i.e., the GLPC) because when he filed suit against Trans Atlas over one year after his accident, his claim against the GLPC had already expired.   Thus, Plaintiff's reliance on *Taylor* is misplaced.

The court is also unpersuaded by Plaintiff's argument that under Louisiana Civil Code Article 2324, as amended in 1996, Plaintiff's timely filing of suit against Trans Atlas interrupts prescription against the GLPC.   Article 2324 provides:

**Liability as solidary or joint and divisible obligation**

A.   He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.

B.   If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation.   A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.

C.   Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.

9

La.Civ. Code Art 2324.

Plaintiff contends that because Trans Atlas Boats and the GLPC are now "joint tortfeasors" (and not solidary obligors) under Louisiana Civil Code Article 2324, Plaintiff's interruption of prescription against Trans Atlas Boats was effective to interrupt prescription against the GLPC. La.Civ.Code Art. 2324(C). However, even though there was a change in law from the definition of solidary obligors to joint tortfeasors, the interruption of prescription has not changed to the extent that a timely filed suit against one joint tortfeasor does not interrupt prescription that has already run against the other joint tortfeasor.

Here, Plaintiff did not file his state law claims for negligence against the GLPC until October 22, 2002 (which was more than one year from Plaintiff's alleged accident on March 28, 2001). And although Plaintiff's Jones Act negligence claims against Trans Atlas were timely filed on May 20, 2002, under the three-year statute of limitations applicable to Jones Act claims, Plaintiff's state law claims for negligence against the GLPC (which were subject to a one-year liberative prescriptive period) had already prescribed on March 29, 2002. Thus, Plaintiff's interruption of prescription against Trans Atlas was not effective against the

10

GLPC.[3]

Accordingly, the court will grant the GLPC's Motion to Dismiss Plaintiff's remaining state-law claims against the GLPC.


## B.  The GLPC's Motion for Summary Judgment Requesting Dismissal of Trans Atlas Boats' Cross-Claim.

With the dismissal of all of Plaintiff's claims against the GLPC, the GLPC is no longer a primary Defendant in this matter, and thus, the court now treats Trans-Atlas Boats' Cross-Claim against the GLPC as a Third-Party Complaint against the GLPC. Further, although Trans Atlas Boats states in its Cross-Claim (now treated as a Third-Party Complaint) that it seeks both indemnity and contribution from the GLPC, Trans Atlas Boats now concedes in its opposition to the GLPC's Motion for Summary Judgment, that it is not seeking indemnity, but only contribution "from the GLPC in the event Trans Atlas is liable to plaintiff for the GLPC's

---

[3]     *Compare, Fontenot v. Max-Welders, Inc.*, 1991 WL 213922 (E.D.La. 1991)(Livaudais, J.).(Plaintiff's timely filed suit against his Jones Act employer did not interrupt prescription against another solidary obligor (a platform owner), because prescription had already run on his claim against the platform owner).

Although *Fontenot* was decided before Louisiana Civil Code Article 2324 was amended changing "solidary obligors" to "joint tortfeasors," the court concludes that the prescription issue in *Fontenot* would be decided the same under amended Article 2324, because once prescription occurs it cannot be interrupted whether the Defendant is a solidary obligor or a joint tortfeasor.

proportionate share of fault." (*See* Trans Atlas Boats' Reply Memo. at 9).

In its Motion for Summary Judgment seeking dismissal of Trans Atlas Boats' claim against the GLPC, the GLPC asserts two grounds for dismissal of Trans Atlas' claim against the GLPC: (1) Trans Atlas Boats' [third-party claim] is not cognizable under this court's admiralty jurisdiction; and (2) even if Trans Atlas had properly asserted a claim under this Court's diversity jurisdiction, Trans Atlas has no cause of action for contribution under Louisiana law--the controlling substantive law. As the court next discusses, both grounds support dismissal of Trans Atlas Boasts' claims against the GLPC.

### 1. Trans Atlas Boats' third-party claim is not cognizable under this court's admiralty jurisdiction.

Trans Atlas Boats' third-party claim is not cognizable under this court's admiralty jurisdiction for the same reasoning set forth by the Fifth Circuit when it affirmed the dismissal of Plaintiff's claims against the GLPC asserted *under the court's admiralty jurisdiction*:

> For a court to have maritime jurisdiction over a tort claim, a plaintiff must satisfy a two-part test: (1) the tort must have occurred on navigable water; and (2) the tort must bear a substantial relationship to traditional maritime activity. *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).

> Federal courts must proceed with caution when
> determining whether to expand admiralty
> jurisdiction. *Woessner v. Johns-Manville
> Sales Corp.*, 757 F.2d 634, 648 (5th Cir. 1985);
> *Executive Jet Aviation, Inc. v. Cleveland*, 409
> U.S. 249, 272-73 (1972). We find that
> admiralty jurisdiction does not exist over
> Hasty's claims against the GLPC. **The conduct
> and activities of the GLPC are insufficiently
> related to traditional maritime activity.**

(*See* Fifth Circuit Opinion attached to Mandate, Doc. No. 86,
emphasis added).

Nevertheless, relying on *Marathon Pipe line Co. v. Drilling
Rig Rowan/Odessa*, 761 F.2d 229 (5th Cir. 1986), Trans Atlas Boats
argues that its claim for contribution against the GLPC should be
governed by general maritime law. In *Marathon*, a pipeline owner
(Marathon) sued the owner of a jack-up drilling rig (Rowan) for
damages arising out of a collision between the rig and pipeline.
The rig owner (Rowan) sought indemnity or contribution from the
manufacturer of hydrocouples (HydroTech) for expenses attributable
to the failure of the hydrocouples used in an attempt to repair the
pipeline. At issue was which law should govern Rowan's third-party
claim against Hydro-Tech.

The Fifth Circuit first determined that Rowan's liability to
Marathon for repair costs was governed by general maritime law made
applicable by the Admiralty Extension Act. (*Id.* at 233). Then,
the Fifth Circuit had to make a choice of law applicable to Rowan's

13

third-party claim against HydroTech (whose liability to the primary plaintiff, Marathon, for the hydrocouple-failure expenses would be governed by Louisiana law, as surrogate federal law pursuant to the Outer Continental Shelf Land Act, 43 U.S.C. §1331, 1333(a)).

The *Marathon* Court concluded that Rowan's indemnity or contribution claim was governed by general maritime law, in accord with previous holdings that "the body of law establishing the indemnitee's primary liability governs his claim for indemnity or contribution against a third party." *Id*. at 235. In other words, "[b]ecasue [Marathon's] primary claim against Rowan was maritime in nature, Rowan's indemnity claim arising therefrom [was] also a maritime claim governed by maritime law." *Id*. at 236.

However, Trans Atlas Boats' reliance on *Marathon* is misplaced. Plaintiff's primary claim against Trans Atlas is based on federal question, i.e., the Jones Act (46 U.S.C. §688), and not general maritime law.[4] Thus, Trans Atlas Boats has no basis to argue that

---

[4]     As previously noted, the Plaintiff initially asserted an unseaworthiness claim under the general maritime law, but that claim was dismissed in a Judgment rendered by the district court on September 3, 2003. That ruling was affirmed by the Fifth Circuit on November 2, 2004. (*See* fn. 1, *supra).* Thus, when Trans Atlas Boats filed its Cross-Claim on July 25, 2005, Plaintiff's only claim against Trans Atlas Boats was his Jones Act negligence claim. "[A]s [Trans Atlas Boats] is seaman [Hasty's] employer, it has no negligence liability to him under the general maritime law but only under the Jones Act." *Simeon v. T. Smith & Son, Inc.*, 853 F.2d 1421, 1433 (5th Cir. 1988).

its third-party claim is governed by general maritime law.[5]
Rather, a persuasive argument could be made that a Jones Act
employer's right to recover indemnity or contribution from a third
party for liability incurred under the Jones Act depends entirely
upon state law.[6] However, as the court next discusses, Trans Atlas
Boats' third-party claim under Louisiana law also fails.

---

[5]     Even if Trans Atlas Boats' third party claim against the GLPC was based on
general maritime law, the court finds under the "traditional view" of contribution adopted by the
Fifth Circuit in *Simeon*, Trans Atlas Boats may not be entitled to contribution from the GLPC,
because the GLPC was immune from direct suit by the Plaintiff based on prescription, and there
has been no suggestion that the GLPC owed Trans Atlas "some independent duty, or has made
some express or implied promise to [Trans Atlas] so that a "contribution" action is permissible."
*Simeon*, 852 F.2d at 1434-35.

[6]     In *Brenham v. Southern Pacific Co.*, 328 F.Supp. 119 (W.D.La. 1971)(Putnam,
J.), a brakeman sued the railroad under the Federal Employers' Liability Act (45 U.S.C. §51, *et
seq.*), and the railroad sought indemnity/contribution from the owners of a junkyard where the
brakeman was injured when he fell on a piece of scrap material that was lying on the railroad's
right-of-way. In addressing the railroad's claim for contribution, the court initially found that: "It
is now settled beyond any doubt that a Railroad's right to recover indemnity or contribution from
a third party for liability incurred under F.E.L.A. depends entirely upon state law." *Id.* at 123
(numerous citations omitted).

        Thus, since the Jones Act incorporates the tort law established in FELA cases into
its own substantive law, it could be concluded through deductive reasoning, that a Jones Act
employer's right to recover indemnity or contribution from a third party for liability incurred
under the Jones Act depends entirely upon state law.

        Further, while *Brenham* was decided under Louisiana law which *then* recognized
a claim for contribution based on solidary liability and provided that contributory negligence was
a complete defense, the *Brenham* court assumed but did not decide that the railroad and the
junkyard were bound in solido toward the plaintiff. Nevertheless, this court notes with interest
that the *Brenham* court denied the railroad's claim for contribution finding it would be
"unjustified" when the obligation of the junkyard towards the plaintiff had prescribed before
plaintiff had filed his suit against the railroad.

## 2.  Trans Atlas Boats has no cause of action for contribution under Louisiana law.

Assuming the court has supplemental jurisdiction (under 28 U.S.C. §1367) over Trans Atlas Boats' third party claim,[7] Louisiana law no longer provides a right to contribution among solidary tortfeasors. Prior to the 1996 amendments, Louisiana Civil Code Article specifically reserved the rights of indemnity and contribution among co-tortfeasors. *Dumas v. State of Louisiana*, 828 So.2d 530, 538 at n. 5 (La. 2002). However, in 1996, the Louisiana legislature adopted a pure comparative fault scheme with amendments to Louisiana Civil Code Articles 2323 and 2324(B),[8]

---

[7]      "[A] third-party claim lacking independent grounds of jurisdiction may be appended to an admiralty action and is cognizable in federal court under the doctrine of ancillary jurisdiction [now supplemental jurisdiction] so long as the ancillary claim arises out of the same core of operative facts as the main admiralty claim." *Joiner v. Diamond D Drilling Co.*, 677 F.2d 1035, 1041 (5th Cir. 1982).

[8]      Louisiana Civil Code Article 2323, as amended in 1996, provides:

**Art. 2323.  Comparative Fault**

A.  In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.  If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages

thereby effecting a "total shift in tort policy."  *Dumas*, 828 So.2d at 538.

---

recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

B.  The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.

C.  Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.

Louisiana Civil Code Article 2324, as amended in 1996, provides:

**Art. 2324.  Liability as solidary or joint and divisible obligation**

A.  He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.

B.  If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation.  A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with nay other person for damages attributable to the fault of such other person, including the person suffering injury, death or loss, regardless of such other person's insolvency, ability to payt, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonable ascertainable.

C.  Interruption of prescription against one join tortfeasor is effective against all joint tortfeasors.

The Louisiana Supreme Court explained:

> Prior to the enactment of the amendments, the policy behind Louisiana's tort law was ensuring that innocent victims received full compensation for their injuries. Now, however, Louisiana's policy is that each tortfeasor pays only for that portion of the damage he has caused and the tortfeasor shall not be solidarily liable with any other person for damages attributable to the fault of that other person. With the advent of this new policy, **the right of contribution among solidary tortfeasors also disappeared since it is no longer necessary in light of the abolishment of solidarity.**

*Id.* (emphasis added); *see also Gresham v. Production Management, Inc.*, 868 So.2d 171, 177 (La. App. 4th Cir. 2004)(under the current law, a tortfeasor cannot seek contribution from any co-tortfeasor).

Finally, even if Trans Atlas Boats was asserting a claim for contribution under Louisiana Civil Code Articles 1804 and 1805,[9]

---

[9]    Louisiana Civil Code Article 1804 provides:

**Art. 1804. Liability of solidary obligors between themselves**

Among solidary obligors, each is liable for his virile portion. If the obligation arises from a contract or quasi contract, virile portions are equal in the absence of agreement or judgment to the contrary. If the obligation arises from an offense or quasi-offense, a virile portion is proportionate to the fault of each obligor.

A solidary obligor who has reentered the whole performance, though subrogated to the right of the obligee, may claim from the other obligors no more than the virile portion of each.

the substantive basis for seeking such a claim is subrogation to the rights of the plaintiff. *Franklin Mercantile III, Inc. v. Glaser*, 806 So.2d 906, 908 (La. App. 4th Cir. 2002). Here, because Plaintiff's main claims against the GLPC are prescribed, Trans Atlas Boat's claim against the GLPC must be dismissed. *Id.* 908-09.[10]

---

> If the circumstances giving rise to the solidary obligation concern only one of the obligors, that obligor is liable for the whole to the other obligors who are then considered only as his sureties.

Louisiana Civil Code Article 1805 provides:

> **Art. 1805. Enforcement of contribution.**
>
> A party sued on an obligation that would be solidary if it exists may seek to enforce contribution against any solidary co-obligor by making him a third party defendant according to the rules of procedure, whether or not that third party has been initially sued, and whether the party seeking to enforce contribution admits or denies liability on the obligation alleged by plaintiff.

Revision Comment (c) to Art. 1805 provides:

> An obligor who has been released by his obligee is no longer an obligor and therefore cannot be made a third party.

[10]     In *Glaser*, plaintiffs who were sub-lessees of commercial premises filed a tort action against their sub-lessor and lessor seeking damages caused by a leaky roof. The sub-lessor filed a cross-claim against the lessor for contribution. However, because the plaintiffs' tort claim against the lessor had prescribed, the Louisiana appellate court dismissed the sub-lessor's cross-claim against the lessor for contribution, absent any claim independent of the plaintiffs' claim. 806 So.2d 907-08.

Accordingly, the court will grant the GLPC's Motion for Summary Judgment, dismissing Trans Atlas Boats' Cross Claim (treated as a Third-Party Claim) against the GLPC.

While the GLPC is no longer a party in this matter, at Trial the court will allow Trans Atlas Boats, as part of its defense, to introduce evidence of the GLPC's alleged negligence, and the court will allow the jury to apportion fault among Trans Atlas Boats, the GLPC, and the Plaintiff. Assuming the jury does not find that the Plaintiff is 100% at fault, the following apportionment/Judgment scenarios are possible:

(1)   if the jury apportions no fault against the GLPC, but apportions fault against Trans Atlas Boats, Judgment will be rendered against Trans Atlas Boats for the total amount of Plaintiff's damages (less Plaintiff's percentage of fault, if any);

(2)   if the jury apportions some percentage of fault against both the GLPC and Trans Atlas Boats, then Judgment will be rendered only against Trans Atlas Boats as jointly and severally liable for the total amount of damages (less Plaintiff's percentage of fault, if any);[11] or

---

[11]   In *Simeon v. T.Smith & Son, Inc.*, 852 F.2d 1421 (5th Cir. 1988), a deckhand sued his employer for negligence under the Jones Act and for unseaworthiness of its vessel, and he also sued the owner of a tugboat for general maritime negligence, as a result of injuries he sustained in an accident involving the employer's vessel and the tugboat. The two defendants

filed cross-claims against each other for contribution.

The Jones Act and unseaworthiness claims against Plaintiff's employer were tried to a jury, and the general maritime claim against the tugboat owner was tried to this court with the jury acting in an advisory capacity. The jury did not find unseaworthiness, but found Jones Act negligence. The jury was also allowed to apportion negligence, finding Plaintiff 10% negligent, his Jones Act employer 58% negligent, and the tugboat owner 32% negligent. *Id.* at 1424.

This court refused to enter a *joint* judgment against both the Plaintiff's employer and the tugboat owner. Rather, under the judgment rendered, each defendant was liable only for its respective proportion of total causation. *Id.* at 1425. However, the Fifth Circuit reversed this court's judgment and found that the Jones Act employer was *jointly* and severally liable with the general maritime defendant (i.e., the tugboat owner) for 90% of the Plaintiff's damages. *Id.* at 1431.

In reaching this conclusion, the Fifth Circuit found that "there is precedent for holding a Jones Act defendant jointly liable with a defendant whose negligence arises under state or general maritime law." *Id. citing Joia v. Jo-Ja Service Corp.*, 817 F.2d 908, 915-18 (1st Cir. 1987); *Eubanks v. Great Lakes Dredge & Dock Co.*, 688 F.2d 716 (11th Cir. 1982), *cert. denied*, 460 U.S. 1083 (1988).

Following *Simeon*, the Fifth Circuit elaborated:

> **The doctrine of joint and several liability is crystallized in the Jones Act context**...By incorporating the remedies afforded to railway employees under the Federal Employers' Liability Act-- with attendant judicial glosses--Congress evidenced its intention that joint and several liability apply in Jones Act cases. Specifically, section 53 of FELA provides that a plaintiff may recover the total amount of his judgment less that part representing his own contributory negligence. There is no exception in the Act for cases in which one or more of the defendants fails to pay its share. Congress, therefore, provided seaman the remedy of joint and several liability that was prevalent at the time the Jones Act was adopted. Indeed ... Congress has statutorily declared that an injured Jones Act seaman is entitled to be made whole with the benefit of joint and several liability.

*Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1134 (5th Cir. 1995)(citations and notation

21

(3)   if the jury apportions no fault against Trans Atlas
Boats, but apportions fault against the GLPC, then
Judgment will be rendered in favor of Trans Atlas Boats,
entitling Plaintiff to no recovery.

If the ultimate Judgment casts Trans Atlas Boats as "jointly
and severally liable" for the total amount of Plaintiff's damages
(less Plaintiff's percentage of fault, if any), and Trans Atlas
Boats appeals such a Judgment, then the Fifth Circuit will have the
jury's apportionment of fault against Trans Atlas Boats, the GLPC,
and the Plaintiff, thereby obviating a remand for a re-trial should
the Fifth Circuit conclude that such a Judgment is erroneous.

### III. Conclusion

For reasons set forth above,

**IT IS ORDERED** that the **"Motion to Dismiss"** (Doc. No. 117)
filed by Defendant, The Greater LaFourche Port Commission (GLPC),
be and is hereby **GRANTED**, dismissing Plaintiff's state-law claims
against the GLPC;

**IT IS FURTHER ORDERED** that the **"Motion for Summary Judgment
Requesting Dismissal of Cross-Claim of Trans Atlas Boats"** (Doc. No.

---

omitted, emphasis added).

22

> (3)   if the jury apportions no fault against Trans Atlas Boats, but apportions fault against the GLPC, then Judgment will be rendered in favor of Trans Atlas Boats, entitling Plaintiff to no recovery.

If the ultimate Judgment casts Trans Atlas Boats as "jointly and severally liable" for the total amount of Plaintiff's damages (less Plaintiff's percentage of fault, if any), and Trans Atlas Boats appeals such a Judgment, then the Fifth Circuit will have the jury's apportionment of fault against Trans Atlas Boats, the GLPC, and the Plaintiff, thereby obviating a remand for a re-trial should the Fifth Circuit conclude that such a Judgment is erroneous.

### III. Conclusion

For reasons set forth above,

**IT IS ORDERED** that the **"Motion to Dismiss"** (Doc. No. 117) filed by Defendant, The Greater LaFourche Port Commission (GLPC), be and is hereby **GRANTED**, dismissing Plaintiff's state-law claims against the GLPC;

**IT IS FURTHER ORDERED** that the **"Motion for Summary Judgment Requesting Dismissal of Cross-Claim of Trans Atlas Boats"** (Doc. No.

---

omitted, emphasis added).

125) filed by Defendant, The Greater LaFourche Port Commission (GLPC), be and is hereby **GRANTED**, dismissing Trans Atlas Boats' Cross-Claim (treated as a Third Party Claim) against the GLPC; and

**IT IS FURTHER ORDERED** that the **"Motion for Summary Judgment on Liability"** (Doc. No. 127) filed by Defendant, The Greater LaFourche Port Commission (GLPC) and set for hearing on August 31, 2005, be and is hereby **DISMISSED AS MOOT**, because all claims against the GLPC have now been dismissed.

New Orleans, Louisiana, this _19_ day of _Oct_, 2005.

_____
A.J. McNAMARA
UNITED STATES DISTRICT JUDGE

23